UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GILBERTO BENZ-PUENTE, JR.,** : | |
|     **Plaintiff,** : | |
| : | |
| **v.** : | No. 24-cv-4763 |
| : | |
| **EXPERIAN,** : | |
|     **Defendant.** : | |

### MEMORANDUM

**Joseph F. Leeson, Jr.**                                                                                              **July 2, 2025**
**United States District Judge**

      Presently before the Court is a Motion for Judgment on the Pleadings (ECF No. 12) filed pursuant to Federal Rule of Civil Procedure 12(c) by Defendant Experian. *Pro se* Plaintiff Gilberto Benz-Puente, Jr. has filed a Response to the Motion (ECF No. 15) and Experian has filed a Reply (ECF No. 16). Other supplemental pleadings are discussed below. For the following reasons and upon notice to the parties, the Motion will be converted to one filed pursuant to Rule 56 because Experian provided materials outside of the pleadings, and will be granted in part. Certain claims not able to be adjudicated under Rule 56 will be dismissed under the Court's authority under 28 U.S.C. § 1915(e)(2)(B) and Benz-Puente will be granted leave to file an amended complaint as to those claims only.

**I.   FACTUAL ALLEGATIONS**[1]

      Benz-Puente alleges that on nine occasions between September 12, 2022, and August 22, 2024, he notified Experian of inaccuracies in his credit report involving accounts with Diamond

---

[1] Unless otherwise stated, the facts set forth in this Memorandum are taken from Benz-Puente's Complaint (ECF No. 2). The Court adopts the pagination assigned by the CM/ECF docketing system to all *pro se* pleadings and unpaginated counseled pleadings.

CU, Upgrade Inc, Truist Bank, and Affirm Inc.[2]  (Compl. at 2.)  The inaccuracies allegedly involved late payments that were not late, accounts that were opened as a result of identity theft, inaccurate dates and payment reports related to these accounts, inaccurate amounts allegedly owed, and incorrect names and addresses that Experian refused to remove.  (*Id*. at 2.)  Benz-Puente states that he provided Experian with evidence why the information was inaccurate and requested "the method of investigation, which was never disclosed to [him]."  (*Id*. at 3.)  These disputes "triggered four or more investigations" and Experian notified him that they were taking place each time the accounts were disputed.  (*Id*.)  However, it allegedly "continued to report the accounts as verified or updated with little to no change and no proof of accuracy or verification" after Benz-Puente provided proof of the inaccuracies.  (*Id*.)  He claims that Experian has willfully continued to report inaccuracies and has harmed his creditworthiness leading to denials of credit or lack of access to credit.  (*Id*.)  On March 3, 2024, Benz-Puente mailed Experian a notarized affidavit attesting that he was the victim of identity theft with regard to each account, included a police report, an FTC report, a scanned copy of his ID, and proof of his residency.  (*Id*. at 5.)  He claims that Experian nonetheless refused to delete or block information relating to the identity theft within the four-day time frame allowed § 605(B) of the Fair Credit Reporting Act ("FCRA").  (*Id*.)  He asserts claims for willful and negligent violation of the FCRA and a state law claim for defamation of character, for which he seeks money damages.

Attached to Experian's Motion are documents from a prior arbitration, unmentioned by Benz-Puente in this Complaint, styled *Benz-Puente v. Experian*, No. 01-23-00037791, filed by Benz-Puente against Experian with the American Arbitration Association.  (ECF Nos. 12-3 – 12-

---

[2] The dates listed by Benz-Puente are September 12, 2022, September 19, 2022, October 6, 2022, November 28, 2022, January 11, 2023, February 21, 2023, February 13, 2024, August 5, 2024, and August 22, 2024.  (Compl. at 2.)

2

8.) They include an Arbitration Notice, Amended Arbitration Notice, Letter from the American Arbitration Association acknowledging initiation of the arbitration, a subsequent Letter confirming completion of the arbitration hearing, and an Award of Arbitrator. Benz-Puente's undated Arbitration Notice lists Diamond CU, Affirm, Upgrade, Capital One, JPMCB, and Truist Bank account numbers and seeks arbitration of claims for Experian's alleged violation of the FCRA based on a failure to investigate his disputes. (ECF No. 12-5 at 2-3.) The Amended Arbitration Notice dated October 5, 2023, lists the same furnishers and account numbers and states that Benz-Puente has "been disputing the referenced accounts being reported to my credit profile for just over a year now." (ECF No. 12-6 at 2-3.) The Amended Arbitration Notice added a claim for defamation of character to the claims under the FCRA, again asked for money damages, and added a request to correct or delete the tradelines from his credit report. (*Id*. at 3-4.)

In a June 18, 2024 "Award of Arbitrator," the Honorable Stephen P. Linebaugh (Ret.), rejected Benz-Puente's claims because he failed to offer sufficient evidence to support his claims under the FCRA, finding that he "failed to explain in what respect the reported information was incorrect or false." (ECF No. 12-3 at 2.) While he alleged inaccuracies in the Notice of Arbitration, the Arbitrator found that Benz-Puente "has not set forth any facts as to which months he contents [sic] the delinquent payments are incorrect or provide any proof that he made payments on the dates that report by Respondent as late." (*Id*.) The Arbitrator also found that Experian conducted a reasonable reinvestigation after receiving the disputes for January, July, and August 2023, sent the relevant information to each furnisher to process the disputes, confirmed that the information the furnishers provided was "not illogical or inconsistent," and

sent the dispute results to Benz-Puente. (*Id*. at 2-3.) He therefore concluded that Benz-Puente failed to prove that Experian committed a willful violation of the FCRA. (*Id*. at 3.)

## II.     STANDARD OF REVIEW

The standard of review used for a motion filed pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings is substantively identical to that of a motion to dismiss filed pursuant to Rule 12(b)(6). The difference between the two is procedural – a motion for judgment on the pleadings is filed after the pleadings are closed, and a motion to dismiss is filed in lieu of an answer. *See Woolley v. Commonwealth of Pa.*, No. 03-1031, 2006 WL 485850, *1 (M.D. Pa. February 27, 2006); *Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989); *Regalbuto v. City of Philadelphia*, 937 F. Supp. 374, 376-77 (E.D. Pa. 1995) ("Courts have applied the same standard of review for a motion for judgment on the pleadings under Rule 12(c) as they do for a motion to dismiss under Rule 12(b)."). Since the pleadings in this case are not closed – Experian filed the Rule 12(c) motion in lieu of an answer – the Court will initially construe the motion as one filed pursuant to Rule 12(b)(6) and apply the substantively identical standard.

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[3] *Ashcroft v. Iqbal*, 556

---

[3] The same standard applies to the Court's authority to dismiss claims pursuant to 28 U.S.C. § 1915(e)(2)(B). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Moreover, a complaint may be dismissed on statutory screening for failing to comply with Federal Rule of Civil Procedure 8 if the complaint "fails to present cognizable legal claims to which a defendant can respond on the merits." *Garrett v. Wexford Health*, 938 F.3d 69, 91, 94 (3d Cir. 2019).

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

Like with a Rule 12(b)(6) motion, in deciding a motion for judgment on the pleadings "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and ask only whether that complaint, liberally construed contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized in Fisher v. Hollingsworth*, No. 22-2846, 2024 WL 3820969 (3d Cir. Aug. 15, 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (explaining that *pro se* filings are construed liberally). "The presence of an affirmative defense does not automatically create a triable issue of fact, but when an affirmative defense is 'apparent on the face of a complaint', it may be appropriate for a

court to dismiss an action pursuant to a Rule 12(b)(6) motion." *Dragotta v. W. View Sav. Bank*, 395 F. App'x 828, 830 (3d Cir. 2010) (quoting *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997)).  Finally, Rule 12(d) requires that if, on a motion under Rules 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d).

Because Experian appended material outside of the pleadings to its Motion, raised arguments based on that material, and Benz-Puente responded to those arguments on May 19, 2025, the Court entered an Order directing the parties to submit additional information regarding the pending motion.  (*See* ECF No. 17.)  Defendant Experian was directed to submit a copy of any arbitration agreement executed by the parties that it asserts governs the arbitration proceeding referenced in its Exhibits and submit a supplemental brief not to exceed ten (10) pages regarding the effect of that agreement on its claim preclusion arguments.  It did so on June 2, 2025. (ECF No. 18.)  Benz-Puente was directed to present any material and supplemental arguments pertinent to the arbitration agreement and Experian's other Exhibits within thirty (30) days.  (*See* ECF No. 17.)  The Court put the parties on notice that the Court would decide Experian's pending Motion without excluding the materials Experian had submitted.  Benz-Puente failed to submit any additional material or argument.  The Court will consider Experian's arguments and exhibits and convert the motion to one under Rule 56 in part as explained below.

### III.   DISCUSSION

#### A.   The Parties' Arguments

Experian argues that this case should be dismissed because the claims Benz-Puente raises in this case were previously the subject of the arbitration proceeding between the parties, Benz-Puente's claims were rejected in the arbitration, and his attempt to reassert them is barred by the

doctrine of claim preclusion. (Def. Mem. (ECF No. 12-1) at 5-6.) It asserts that the same four accounts listed in the Complaint – Diamond CU, Upgrade Inc., Truist Bank, and Affirm Inc. – match the furnishers listed in the Arbitration Notice Benz-Puente filed to initiate the arbitration proceeding. (*Id*. at 6-7.) While Experian notes that Benz-Puente did not list account numbers in his Complaint like he did in the two versions of the Arbitration Notice, even if he is complaining here about separate accounts with those same furnishers he would have been aware of the potential claims related to those accounts as well at the time he filed for arbitration and could have included them in the proceeding. (*Id*. at 7.) Since he attempts to assert the same causes of action against the same party, Experian concludes that the Complaint must be dismissed.

Benz-Puente responds that his action is "based on new disputes involving the same accounts, with new reporting dates, new amounts, and new inaccuracies that were not adjudicated in the prior arbitration." (Response (ECF No. 15) at 1.) He argues that the arbitration was decided on June 18, 2024, and the claims in this action "include disputes and violations that arose after that settlement date [sic]." (*Id*.) To avoid the application of claim preclusion, Benz-Puente argues that his current claims involving post-June 18, 2024 inaccuracies arose after the arbitration and could not have been raised as part of that proceeding. (*Id*. at 2 (arguing the FCRA claims are based on "new reporting errors and violations [that] occurred after the arbitration, and could not have been adjudicated at that time, [so] res judicata does not apply").) He argues his defamation claim also is based on Experian's post-arbitration failures to correct newly disputed balances, changed reporting dates, and new inaccuracies on the same accounts.[4] (*Id*. at 2-3.)

---

[4] These allegations, however, are not pled in the Complaint. As discussed further below, any claim Benz-Puente seeks to present based on them fails to satisfy Rule 8.

Benz-Puente also argues the arbitration proceedings "lacked due process" because his evidence was not properly considered. (*Id*. at 1.) He claims the arbitration was flawed because "Experian failed to properly consider supporting documentation and evidence" including "disputes, affidavits, police reports and FTC reports documenting ongoing inaccuracies," and did not disclose its investigation methods, depriving him "of the ability to challenge the adequacy of Experian's investigation." (*Id*. at 2.) Due to these flaws, Benz-Puente argues that "this lawsuit is necessary to ensure a proper legal review of Experian's continued violations." (*Id*.)

Experian replies that claim preclusion is applicable since Benz-Puente admits in his Response that the accounts identified in the Complaint are the same accounts that form the basis of his claims from the prior arbitration, all of which were adjudicated, and his attempt to distinguish new disputes regarding the same accounts improperly conflates a "dispute" a consumer can make to a credit reporting agency under the FCRA with a "claim" a consumer can pursue under the FCRA. (Reply (ECF No. 16) at 1-2 (citing *Phillips v. TransUnion LLC*, 12-1058, 2012 WL 1439088 (E.D. Pa. Apr. 25, 2012).)

Finally, in its supplemental submission, Experian argues that the parties entered into an agreement to arbitrate disputes when Benz-Puente agreed to the April 3, 2023 version of the Terms of Use Agreement for Experian's product Creditworks. (ECF No. 18-2 at 2 n.1.) Experian attached a copy of that agreement to its Supplemental Response. (ECF No. 18-1 at 1-51.) The agreement by its terms provides for resolution of disputes through binding arbitration or small claims court. (*Id*. at 7 ("WE EACH AGREE TO RESOLVE THOSE DISPUTES THROUGH BINDING ARBITRATION OR SMALL CLAIMS COURT INSTEAD OF IN COURTS OF GENERAL JURISDICTION TO THE FULLEST EXTENT PERMITTED BY LAW.")); (*id*. at 8 ("ECS and you agree to arbitrate all disputes and claims between us that arise

8

out of or relate to this Agreement, which includes any information you obtain through the Services or Websites, to the maximum extent permitted by law. . . .")); (*id*. at 12 ("Notwithstanding the foregoing, either party may bring an individual action in small claims court.")). It further provides "the Federal Arbitration Act governs the interpretation and enforcement of this arbitration provision."[5] (*Id*. at 9.) Experian argues that pursuant to the Arbitration Agreement, Benz-Puente pursued claims against it under the rules of the American Arbitration Association, availing himself of his rights contained in the Arbitration Agreement. (ECF No. 18-2 at 5.)

      **B.    Analysis**

"Claim preclusion – which some courts and commentators also call *res judicata* – protects defendants from the risk of repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits." *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (internal quotations omitted). The doctrine also applies to final arbitral awards. *Witkowski v. Welch*, 173 F.3d 192, 199-200 (3d Cir. 1999) ("The doctrine of collateral estoppel can apply to the arbitration process in which the Witkowskis obtained a

---

[5] Benz-Puente raises arguments regarding the procedural propriety of the arbitration. The FAA permits a party to an arbitration to challenge an award "procured by corruption, fraud or undue means." 9 U.S.C. § 10(a)(1). To pursue an appeal, a "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. But Benz-Puente did not style his case as a challenge to the arbitration award, did not allege in the Complaint any grounds to challenge the award, and his arguments in his Response about alleged defects in the arbitral proceedings cannot amend or add to his claims. *See St. George v. Pinellas Cnty*., 285 F.3d 1334, 1337 (11th Cir. 2002) (citation omitted) (explaining that when evaluating a motion to dismiss "[t]he scope of the review must be limited to the four corners of the complaint"); *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1107 (7th Cir.1984) (holding that a complaint may not be amended by a brief in opposition to motion to dismiss); *Thurmond v. Bayview Loan Servicing, LLC*, No. 17-196, 2017 WL 6347961, at *7 (E.D. Va. Dec. 12, 2017) ("Thurmond, of course, cannot add claims to her Amended Complaint in her Response [to a motion to dismiss].").

judgment against Welch" because "a valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court" (quoting Restatement (Second) of Judgments § 84 (1982))). Claim preclusion prevents parties from raising issues that could have been raised and decided in a prior case regardless of whether those issues were litigated. *Beasley*, 14 F.4th at 231. In other words, "[t]he prior judgment's preclusive effect . . . extends not only to the claims that the plaintiff brought in the first action, but also to any claims the plaintiff could have asserted in the previous lawsuit." *Id.* at 231-32. "Claim preclusion similarly reaches theories of recovery: a plaintiff who asserts a different theory of recovery in a separate lawsuit cannot avoid claim preclusion when the events underlying the two suits are essentially the same." *Id.* at 232; *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010) ("'Rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the *essential similarity* of the underlying events giving rise to the various legal claims.'") (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983-84 (3d Cir. 1984)).

Three elements are required for claim preclusion to apply: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Marmon Coal Co. v. Dir., Office Workers' Compensation Programs*, 726 F.3d 387, 394 (3d Cir. 2013) (internal quotation marks omitted). In evaluating whether those elements exist, courts do not proceed mechanically, "but focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out of the same occurrence in a single suit." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (internal quotation marks and brackets omitted). "The purpose of res judicata is to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by

preventing inconsistent decisions, encourage reliance on adjudication.'" *Marmon Coal Co.*, 726 F.3d at 394 (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

The doctrine extends to claims that "could have been brought," *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008), but under precedent of the United States Court of Appeals for the Third Circuit, "there is no single definition of 'cause of action' for purposes of claim preclusion," *Davis v. Wells Fargo*, 824 F.3d 333, 341-42 (3d Cir. 2016). Rather, the Circuit has explained that "we take a broad view of what constitutes the same cause of action and that res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims." *Blunt*, 767 F.3d at 277 (internal quotation and editorial marks omitted). "In short, the focus is on facts rather than legal theories." *Davis*, 824 F.3d at 312 (citing *Elkadrawy v. Vanguard Grp.*, 584 F.3d 169, 173 (3d Cir. 2009) (The "analysis does not depend on the specific legal theory invoked. . . ."). Stated succinctly, *res judicata* bars a claim that "arises from the same set of facts as a claim adjudicated on the merits in the earlier litigation." *Blunt*, 767 F.3d at 277.

The determinative issue here is whether Benz-Puente is attempting to raise the claims he raised or could have raised in the arbitration. "*Res judicata* does not punish a litigant for failing to prosecute a claim in an earlier suit if that claim had not yet accrued at the time of the initial action." *United Steel Workers of Am., AFL-CIO-CLC v. PPG Indus., Inc.*, 154 F. App'x 288, 291 (3d Cir. 2005) (citing *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 203 (3d Cir. 1999)); *see also Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008) (stating that the doctrine cannot be used to bar a suit based on claims that accrue after a prior suit was filed); *Alexander & Alexander, Inc. v. Van Impe*, 787 F.2d 163, 166 (3d Cir. 1986) ("Res judicata applies . . . only to claims arising prior to the entry of judgment. It does not bar claims arising subsequent to the

11

entry of judgment and which did not then exist or could not have been sued upon in the prior action."). In the specific context of FCRA claims, *res judicata* will not bar the subsequent action if the new FCRA claim accrued only after the first lawsuit was filed. *Sonichsen v. Fifth Third Bank*, No. 16-09874, 2017 WL 4122763, at *3 (N.D. Ill. Sept. 18, 2017).

As noted, the original Arbitration Notice that Benz-Puente submitted is undated, but the Amended Arbitration Notice dated October 5, 2023, lists the same furnishers and account numbers as the original, and states that Benz-Puente has "been disputing the referenced accounts being reported to my credit profile for just over a year now." (ECF No. 12-6 at 2-3.) The arbitration concluded on June 18, 2024, when the "Award of Arbitrator" was issued. The dates on which Benz-Puente alleges in the Complaint that he notified Experian of inaccuracies in his credit report – and which form the basis of his FCRA claims – are September 12, 2022, September 19, 2022, October 6, 2022, November 28, 2022, January 11, 2023, February 21, 2023, February 13, 2024, August 5, 2024, and August 22, 2024. (Compl. at 2.) He also asserts that on March 3, 2024, he mailed Experian a notarized affidavit attesting that he was the victim of identity theft with regard to each account. (*Id*. at 5.) Since the arbitration concluded on June 18, 2024, the only possible post-arbitration "disputes" asserted in the Complaint are the August 5, 2024 and August 22, 2024 notices. All earlier claims – namely any FCRA or defamation claim based on the September 12, 2022, September 19, 2022, October 6, 2022, November 28, 2022, January 11, 2023, February 21, 2023, and February 13, 2024 disputes – are barred by claim preclusion because they were or could have been raised in the arbitration. Those claims will be dismissed.

The question of whether the two disputes in August 2024 also satisfy the third element, meaning that the FCRA and defamation claims based on them are also barred by the claim

12

preclusion doctrine, is not as clear. While Experian argues that they involve the same inaccuracies adjudicated in the arbitration, the Court cannot determine that question given the vague terms in which Benz-Puente described these disputes in his Complaint, including his failure to allege the basis of the inaccuracies or mention the arbitration proceeding **at all**. It may be that he can allege additional facts to assert plausibly that the two disputes in August 2024 involved different inaccuracies in this credit report. The Court cannot say at this time that the prior arbitration decision precludes a claim Benz-Puente may have concerning the specific furnishers and inaccuracies that postdate the arbitration decision. Neither can those claims proceed past the pleading stage, however, since Benz-Puente has failed to allege a plausible FCRA violation based upon them.

To state a claim against a consumer reporting agency under 15 U.S.C. § 1681e(b), a plaintiff must plead the following elements: (1) inaccurate information was included in a credit report; (2) the inaccuracy was due to the consumer reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered an injury; and (4) that injury was caused by the inclusion of the inaccurate entry. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010) (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996)). To establish that a consumer reporting agency is liable under 15 U.S.C. § 1681i(a) for failing to reinvestigate a dispute under the FCRA, the consumer must establish that the consumer reporting agency had a duty to do so, and that it would have discovered a discrepancy had it undertaken a reasonable investigation. *Id.* at 713 (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)). To proceed under either § 1681e(b) or § 1681i(a), a plaintiff must show that the reported information was in fact inaccurate. *Bibbs v. Trans Union LLC*, 43 F.3d 331, 339 (3d Cir. 2022). A consumer report is

13

inaccurate "when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect."  *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 902 (3d Cir. 2011) (*per curiam*) (cleaned up); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009); *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001); *Shimon v. Equifax Info. Servs. LLC*, 431 F. Supp. 3d 115, 120 (E.D.N.Y. 2020), *aff'd*, 994 F.3d 88 (2d Cir. 2021).

In *Williams v. Experian Information Solutions, Inc.*, the Third Circuit affirmed the dismissal of FCRA claims that consisted "almost entirely of conclusory allegations" of "inaccurate" information.  2024 WL 3439776, at *1 (3d Cir. July 17, 2024) (*per curiam*).  The court found that the plaintiff failed to "allege how or why . . . [the information at issue] was inaccurate or how Experian should have reported it.  Without any allegations in that regard, his complaint does not permit the reasonable inference that his credit report was inaccurate, let alone that Experian was liable for that inaccuracy."  *Id.*  The court pointed out, as an example, that the plaintiff "did not specify whether the . . . account information was inaccurate because he did not really have a balance on the account, because he had not really made a late payment, or because the account was not really his."  *Id.* at *1 n.2.  In the case at bar, Benz-Puente's allegations are conclusory and similarly lack factual support.  The Complaint does not sufficiently allege how the information is inaccurate and does not permit the reasonable inference that the information contained in Benz-Puente's consumer report is "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to have an adverse effect."  *See Cook v. TransUnion*, No. 23-1146, 2024 WL 128204, at *2 (E.D. Pa. Jan. 11, 2024) (dismissing FCRA claims where the plaintiff failed to allege sufficient facts regarding the inaccurate information). Accordingly, the Court will deny Experian's Motion with regard to the two disputes in August

2024, dismiss those aspects of the Complaint under the Court's § 1915 screening authority, and permit Benz-Puente an opportunity to file an amended complaint if he is able to allege a plausible FCRA violation based upon them.[6]

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Experian's motion in part, dismiss claims based on allege inaccuracies that predate the arbitration decision with prejudice, and dismiss without prejudice claims based on alleged post-arbitration date inaccuracies on statutory screening. Benz-Puente will be granted leave to file an amended complaint to reassert any claims based on the two disputes in August 2024 if he is able to identify a **new** inaccuracy in any of the credit lines mentioned in the Complaint that occurred after the arbitration. Because he appears to have purposefully failed mention the prior arbitration in his original Complaint, if he

---

[6] The Court further notes that Benz-Puente must have constitutional standing to bring his claims. To have standing to bring a claim in federal court, a plaintiff must show: (1) that he suffered an injury in fact, (2) a causal connection between the injury and the challenged conduct of the defendant, and (3) that the injury is likely to be redressed by a favorable judicial decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560. "'For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1.).

In *TransUnion LLC v. Ramierz*, 594 U.S. 413, 425 (2021), the Supreme Court focused on the "concreteness" prong of the standing analysis. The Court expressly rejected the notion that "a plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 426 (quoting *Spokeo*, 578 U.S. at 341). Instead, a plaintiff must allege a concrete injury separate and apart from an injury under the law. *Id.* (explaining that "an injury in law is not an injury in fact"). "Where a plaintiff merely alleges a 'bare procedural violation, divorced from any concrete harm,' the injury-in-fact requirement of Article III is not satisfied." *Perez v. I.C. System, Inc.*, No. 21-14883, 2022 WL 17991143, at *3 (D.N.J. Dec. 29, 2022) (quoting *Spokeo*, 578 U.S. at 341).

The party who invokes federal jurisdiction bears the burden of establishing standing. *Spokeo*, 578 U.S. at 339. To satisfy the standing requirement, Benz-Puente must sufficiently tie his alleged injuries to the conduct of Experian, because a bare procedural violation does not provide the relief Benz-Puente seeks.

15

opts to amend, Benz-Puente is warned that Federal Rule of Civil Procedure 11 provides that, by presenting a pleading to the Court, an unrepresented litigant certifies that claims are warranted by law and his factual contentions have evidentiary support. If a court determines that Rule 11 has been violated, after notice and an opportunity to respond, the court may impose an appropriate sanction on an unrepresented litigant. If Benz-Puente attempts to assert a claim that is unwarranted because it has already been adjudicated, his conduct may result in the imposition of an appropriate sanction. An appropriate Order will be entered.

                                        **BY THE COURT:**

                                        */s/ Joseph F. Leeson, Jr.*
                                        **JOSEPH F. LEESON, JR.**
                                        **United States District Judge**